**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND LOPEZ, | : | |
|    Plaintiff. | : | |
| | : | CIVIL ACTION |
|         v. | : | |
| | : | NO. 07-2977 |
| ALROD ENTERPRISES, INC., | : | |
|    Defendant. | : | |

**MEMORANDUM AND ORDER**

**March 11, 2009**                                                                                               **Anita B. Brody, J.**

**I. INTRODUCTION**

This case involves a dispute between Raymond Lopez and his former employer Alrod Enterprises, Inc., ("Alrod") a security company. Lopez was a security officer at a U.S. Customs House under a contract between Alrod and the Federal Protective Service ("FPS"). An FPS inspector witnessed Lopez abandon his post while armed to buy food. Alrod suspended him for one month in response and then fired Lopez when FPS demanded his removal from the contract. Alleging that Alrod treated non-Hispanic employees less severely, Lopez sued Alrod for race discrimination and retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e-200e-17, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951-963.[1] Before me now is Alrod's motion for summary judgment under Fed. R. Civ.

---

[1] Jurisdiction may be exercised under 28 U.S.C. § 1331 because Lopez sues under Title VII.

1

Pro. 56 (Doc. #17).  Because Lopez has not rebutted Alrod's legitimate reason for firing him or established a prima facie case of retaliation, I will grant summary judgment.

## II. BACKGROUND[2]

Alrod provided security personnel to federal buildings in Philadelphia, PA, under a contract with FPS, an agency within the U.S. Department of Homeland Security.  Alrod had no other contracts.  Lopez, who is Hispanic, began working for Alrod in November 1999 as a security officer.  He was fired in 2003 because of alleged sexual harassment, but Lopez filed a grievance with the U.S. Equal Employment Opportunity Commission ("EEOC"), reached a settlement, and was rehired.  The instant dispute began in February 2005 when Lopez was assigned to the U.S. Customs House at 200 Chestnut Street.

On February 3, 2005, Lopez was scheduled to work from 2:00 PM to 10:00 PM.  He called his supervisor to request a break several times at around 4:30 PM and 6:15 PM.  Receiving no answer, he walked across the street and entered a pizza shop at around 6:25 PM.  Lopez returned five minutes later with a newspaper and a bag containing food.  He never obtained permission to leave, and he failed to sign out or return his gun before leaving.

FPS Inspector Richard Rhames saw Lopez return from the pizza shop.  Rhames was FPS's chief inspector and contracting officer at the Customs House.  He questioned Lopez, who admitted leaving to buy the newspaper.  Rhames reported the incident to Hal Gindrow, Alrod's

---

[2] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  Here, the facts are stated in the light most favorable to Lopez, with all justifiable inferences drawn in his favor.

2

project manager responsible for the contract with FPS. His report cites Lopez for abandoning his post, lying on official documents, and failing to return his gun before leaving.[3] Lopez has admitted these allegations.

Gindrow transferred Lopez away from the Customs House on February 7, 2005, and suspended him on February 11, 2005, pending an investigation by Rhames. When the investigation was complete, Rhames demanded that Lopez be removed from the contract.[4] Gindrow then fired Lopez on April 11, 2005, telling him that his termination was based on his misconduct of February 3, 2005, and Rhames's demand. Although Lopez's termination and rehire in 2003 occurred before Gindrow arrived and involved a confidential settlement agreement, Gindrow was aware that some previous incident involving Lopez had occurred.[5]

---

[3] The report concluded: "Officer Lopez's blatant disregard for the Department of Homeland Security / Federal Protective Service (DHS/FPS) rules and regulations posed a significant security and safety hazard to the US Government employees as well as the facility he is supposed to protect." (Pl.'s Ex. 3.) Lopez admitted this statement's accuracy. (Lopez Dep. 47, July 16, 2008.)

[4] Alrod's contract with FPS stated that FPS may "permanently remove any employee from service under this contract" for "[u]nauthorized post abandonment" or any other "[v]iolation of security procedures or regulations." (Pl.'s Ex. 16.)

[5] Lopez testified: "When he [Gindrow] took over as project manager … I introduced myself, and he stated something to the effect that … he's heard of problems I had before, but he told me basically that … everybody, you know, while he's there is pretty much under a clean slate. He's not gonna hold nothing against anybody. … So that indicated to me that he was told by somebody in corporate or another officer might have mentioned to him that, in fact, some incident regarding my employment with Alrod did take place prior to him being there." (Lopez Dep. 78-79.) Lopez thus had a "gut feeling" that Gindrow retaliated against him. (Lopez Dep. 80-81.)

Lopez asserts that Alrod's non-Hispanic security officers received less severe punishments for similar misconduct.[6] Anderson Nash abandoned his post when his mother was sick, but his supervisor Michael Coston merely transferred him. Michael Wiggins abandoned his post to buy food, but his supervisor Michael Hall merely transferred him. Kimberly Settles abandoned her post during lunch and signed in falsely when she returned, but she received no punishment even though her supervisor Hall knew of her misconduct. Samuel Woniewala abandoned his post to leave for his second job and left his gun unattended, but his supervisor Vincent DeMatteo merely suspended him for about five days and transferred him. Andre Brown was found asleep at his post, but his supervisor Gindrow never fired him. Joseph Pipitone was also found asleep at his post, and Gindrow suspended him for two weeks, reduced his work schedule for six weeks, and fired him.[7].

---

[6] Some evidence offered for this may be ignored. First, Lopez's testimony that security officers at the Customs House commonly cross Chestnut Street for food and his testimony about Towana Broadus, Krisha Cross, and Verona Davis (Lopez Dep. 32, 105-14) are irrelevant because Lopez does not offer any evidence that Alrod knew about their misconduct. Second, Lopez testified that Michael Coston told him that Delores Richardson was merely suspended after she abandoned her post and an FPS inspector saw her, but he admitted not knowing who told Coston about the incident. (Lopez Dep. 105.) This testimony contains hearsay within hearsay. Although "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony," J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990), the person who told Coston about Richardson cannot later present evidence because Lopez cannot identify him. Thus, the testimony about Richardson cannot be considered. See Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996) (holding that a "hearsay statement by [an] unknown individual … could not be considered on a motion for summary judgment" because it was "not capable of being admissible at trial").

[7] Lopez admitted that he and Pipitone received the same punishment. (Lopez Dep. 108.)

**III. STANDARD**

Fed. R. Civ. Pro. 56 provides that a court must grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Facts are "material" when they might affect the outcome of the case, and a "genuine issue" exists when the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). The moving party "is entitled to judgment as a matter of law" when the non-moving party fails to make an adequate showing on an essential element for which he has the burden of proof at trial. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999). To overcome a motion for summary judgment, the non-moving party "may not rely merely on allegations or denials" but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e). Although a court may only consider "facts that would be admissible in evidence," id., parties do not have to "produce evidence in a form that would be admissible at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

**IV. DISCUSSION**

Lopez asserts claims for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §§ 2000e-200e-17, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. §§ 951-963 ("PHRA"). Because Title VII and the PHRA require the same analysis, I will only discuss Lopez's claims under Title VII. See Goosby v.

Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000) (noting that Title VII and the PHRA require identical analyses).

**A.  Discrimination**

Title VII makes it unlawful for an employer "to discriminate against any individual … because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Courts have interpreted "discriminate" to mean that a plaintiff alleging that he was treated differently from others because of race must prove that his employer had a discriminatory intent.  See Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 335 n.15 (1977) (noting that "[p]roof of discriminatory motive is critical" to show disparate treatment).  Absent direct evidence of discriminatory intent, courts evaluate a disparate-treatment claim using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Under this framework, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.  Id.  After a prima facie case has been established, "an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action."  Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).  If the defendant carries this burden, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination."  Id.

**1. Plaintiff's Initial Burden**

To establish a prima facie case of discrimination, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.  Id.  Alrod concedes that Lopez satisfies the first three elements.  (Mot. for Summ. J. 2; Br. in Supp. of Mot. for Summ. J. 4.)

A plaintiff who alleges discriminatory discharge may satisfy the fourth element by showing that (1) he was replaced by someone outside of the protected class, Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999); (2) his "employer had a continued need for someone to perform the same work after the [he] left," Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 354 (3d Cir. 1999) (internal quotations omitted); or (3) "other employees not in a protected class were treated more favorably," Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993).  Lopez does not offer any evidence concerning the first or second option but does allege that non-Hispanic employees were treated more favorably.  In particular, the record shows that non-Hispanic employees Nash, Wiggins, Settles, and Woniewala also abandoned their posts but received less severe punishments than did Lopez.  Although not overwhelming, this evidence suffices for a prima facie case.  See Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008) ("[T]he prima facie requirement for making a Title VII claim is not onerous and poses a burden easily met.") (internal quotations omitted).

### 2. Defendant's Burden

When a plaintiff establishes a prima facie case the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Makky, 541 F.3d at 214. To carry this burden "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Hicks, 509 U.S. at 507 (emphasis and internal quotations omitted).

Alrod has carried this burden by offering evidence that Gindrow fired Lopez because of his misconduct and Rhames's demand. (See Pl.'s Exs. 13-14; Gindrow Dep. 27, July 28, 2008.) Lopez admitted abandoning his post, lying on official documents, failing to return his gun, and that his misconduct violated Alrod's contract with FPS. (See Pl.'s Ex. 3; Lopez Dep. 47.) Rhames reported this misconduct to Gindrow in February 2005 and said that an investigation would follow. (Pl.'s Exs. 3, 12.) Gindrow suspended Lopez pending this investigation. (Pl.'s Ex. 11.) Rhames completed his investigation in April 2005 and demanded that Gindrow remove Lopez from the contract. (See Gindrow Dep. 18-19, 24-27.) Only then was Lopez fired. Given this evidence, Alrod has articulated a legitimate, non-discriminatory reason for firing Lopez.

### 3. Plaintiff's Ultimate Burden

To overcome a motion for summary judgment after the defendant has articulated a legitimate reason for the adverse employment action, the plaintiff must offer evidence from which a reasonable fact-finder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Lopez has failed to carry this burden. First, he does not offer any evidence that could lead one to disbelieve Alrod's stated reason. His examples of other employees who were punished less severely are fully consistent with Alrod's explanation. None of them involves FPS's contracting officer directing Gindrow to remove the employee from the contract.

Second, the little evidence that Lopez does offer cannot persuade a reasonable fact-finder that Alrod intentionally discriminated against him. For one thing, his examples are not probative because either they involve supervisors other than Gindrow or they show Gindrow being even-handed—given that Pipitone and Lopez received the same punishment. Furthermore, not one example involves a customer complaining to Alrod. Lopez's evidence merely shows that non-Hispanic employees *differently* situated from him were treated more favorably.[8]

---

[8] This makes even Lopez's prima facie case look doubtful, but the Third Circuit has not explained how similarly situated the other employees must be for a prima facie case. According to most Circuits, other employees being treated more favorably implies discrimination only when the plaintiff and other employees are similarly situated at least in all material respects. See Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 412 (6th Cir. 2008) (requiring them to be "similar in all of the relevant aspects"); Sartor v. Spherion Corp., 388 F.3d 275, 279 (7th Cir. 2004) (requiring them to be "directly comparable in all material respects"); Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003) (requiring them to be "similarly situated in all respects"); Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (requiring them to be "similarly situated in all material respects"); Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996) (also requiring them to be "similarly situated in all material respects"); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (requiring a plaintiff to show that other employees "were treated differently under circumstances nearly identical to his"). Lopez's evidence would not establish a prima facie case under this standard. See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000) (noting that "a plaintiff [who] claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason … must show that … the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such

Finally, undisputed evidence in the record demonstrates that Gindrow was compelled to fire Lopez when Rhames demanded his removal from the contract. Alrod had no contracts other than the one with FPS. (Gindrow Dep. 34.) And this contract gave FPS the legal power to "permanently remove any employee from service under this contract" based on "[u]nauthorized post abandonment" or indeed any "[v]iolation of security procedures or regulations." (Pl.'s Ex. 16.) Thus when Lopez admitted such misconduct and Rhames demanded his removal from the contract, Gindrow had no choice but to fire him. Lopez does not even come close to rebutting this overwhelming evidence. Nor has he alleged or offered any evidence that Rhames discriminated against him.[9] His claim of discrimination thus cannot go forward.

**B.  Retaliation**

Title VII also makes it unlawful for an employer "to discriminate against any of his employees … because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show that (1) he was engaged in an activity that Title VII protects, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 231

---

differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them").

[9] I have not addressed whether Alrod may be liable under Title VII based on evidence that Rhames discriminated against Lopez in demanding his removal from the contract because no such evidence was offered or even suggested.

(3d Cir. 2007). "The ultimate question in any retaliation case is [whether there is] an intent to retaliate." Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006).

Lopez asserts that Gindrow fired him because of his grievance with the EEOC. Alrod does not dispute the first two elements but argues that Lopez cannot show a causal connection between his EEOC grievance in 2003 and Gindrow's decision to fire him in 2005. With regard to causal connection, a court first considers the temporal proximity between the protected activity and adverse action. LeBoon, 503 F.3d at 232. Unless the proximity is unusually suggestive, the court then asks "whether the proffered evidence, looked at as a whole, may suffice to raise the inference" of causality. Id. Lopez's only evidence is that Gindrow knew that "some incident regarding [Lopez's] employment with Alrod did take place prior to him being there." (Lopez Dep. 79.) This scant evidence does not imply causation, especially given that Lopez was fired two years after his EEOC grievance. Thus, Lopez has shown no causal link between his EEOC grievance and termination.

## V. Conclusion

Lopez cannot prevail on his racial-discrimination claim because he offers no evidence that rebuts Alrod's legitimate reason for firing him. He cannot prevail on his retaliation claim either because he offers no evidence that shows a causal connection between his EEOC grievance in 2003 and termination in 2005. Therefore, summary judgment must be granted.

## **ORDER**

**AND NOW**, this _11th __ day of March, 2009, it is **ORDERED** that:

- Motion for Summary Judgment of Alrod Enterprises, Inc., (Doc. #17) is **GRANTED**; and

- This case shall be marked as **CLOSED**.

s/Anita B. Brody
_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to: